**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bank of America, N.A., | |
|     Plaintiff, | No. CV-12-00015-PHX-PGR |
| vs. | ORDER |
| POST Integrations, Inc., et al., | |
|     Defendants. | |

    Pending before the Court is Plaintiff's Motion for Summary Judgment (Doc. 17). Having considered the parties' memoranda in light of the relevant record and the oral argument of counsel held on January 28, 2013, the Court finds that the motion should be granted pursuant to Fed.R.Civ.P. 56 to the extent set forth in this Order.

Background

    Defendants POST Integrations, Inc. and Ebocom, L.L.C. process credit card payments through the VISA and MasterCard networks and provide related services to their merchant customers in the hotel hospitality industry which accept VISA and MasterCard payments from their retail customers. In order to be able to process credit card transactions, the defendants are required to have a sponsoring financial

institution which is a member of the VISA and MasterCard networks and have a bank identification number ("BIN"). Fleet National Bank, plaintiff Bank of America's predecessor-in-interest, entered into identical BIN Sponsorship Agreements with each of the defendants in December, 2003. In December, 2009, BOA notified the defendants that it was terminating the BIN Sponsorship Agreements effective December 31, 2010, and urged the defendants to find a new BIN sponsor. The defendants, having failed to obtain a new sponsor, contested BOA's right to end its sponsor services even after its termination of the sponsorship agreements until such time as the defendants could find a new BIN sponsor. In October, 2011, BOA notified VISA, MasterCard, and the defendants that it was terminating the BIN sponsorship agreements effective December 31, 2011; shortly after that notification, VISA notified the parties that BOA had to provide written notification of its termination decision to the defendants' impacted merchant customers at least 90 days prior to the termination. The defendants have taken the position that notwithstanding VISA's notification requirement, the terms of the sponsorship agreements prohibit BOA from notifying the impacted merchants of the termination of the sponsorship agreements. In light of the parties' ongoing dispute, BOA has continued, unwillingly, to provide BIN sponsorship services and the defendants have continued to pay BOA for those services.

Discussion

BOA, as it did in its Second Amended Complaint, seeks three declarations in its summary judgment motion: (1) that it properly terminated the BIN sponsorship agreements; (2) that it may notify the impacted merchants of the imminent cessation of services; and (3) that it may stop sponsoring the defendants 90 days after the

merchant notifications have been made.

The defendants do not dispute that BOA is entitled to have the Court enter summary judgment in BOA's favor as to the first and third declarations sought by BOA as the defendants conceded in their response to the summary judgment motion, and again at oral argument, that BOA validly terminated the sponsorship agreements effective December 31, 2010, and that BOA can stop sponsoring the defendants on the VISA and MasterCard networks 90 days after written notification has been provided to the impacted merchants. As a result of their concessions, the defendants state that the only remaining disputed issues are (1) who makes the notification to the impacted merchants, (2) the wording of that notification, and (3) the timing of the notification. The Court concludes that those issues should be resolved in the defendants' favor.

A. Notification

The BIN Sponsorship Agreements provide in § 2.3(A) that the sponsoring bank will utilize the defendants for all communications with the merchants and that all communications with the merchants will be conducted by the defendants; they also provide through § 7.4 and § 9.12 that § 2.3 survives the termination of the agreements. The agreements also provide in § 5.1(B), however, that if there is any inconsistency between the sponsorship agreements "and any Rules, the Rules will apply[;]" the agreements define "Rules" as meaning "all rules, regulations or requirements provided by Bank to POST that are issues or promulgated by VISA, MasterCard ... from time to time applicable to activities or transactions contemplated by this Agreement or under Merchant Agreements." BOA asserts, and the defendants do not dispute, that on October 10, 2011, VISA notified Bank of America and the defendants that, before BOA could cease providing sponsorship services,

BOA must provide written notification of its termination decision to the impacted merchants and provide the merchants at least 90 days from the date of the written notification to find an alternative arrangement for processing credit cards on the VISA network.

BOA, without any analysis, asserts that VISA's notification requirement is a "Rule" for purposes of § 5.1(B) because it constitutes a "rule, regulation, or requirement," and therefore it supercedes the presumptive exclusive communication limitation of § 2.3(A) and entitles BOA to directly notify the impacted merchants of BOA's termination of the sponsorship agreements. Although BOA made no attempt to explain in its memoranda why a notification requirement issued by VISA should control the notification method applicable to the merchants on the totally separate MasterCard network, BOA stated at oral argument that the distinction between the card networks has no significance as a practical matter because all of the impacted merchants are on both networks.

The Court concludes that it need not resolve the issue of whether § 5.1(B) trumps § 2.3(A) and the other provisions relied on by the defendants. While the defendants in effect waived any objection to the applicability of § 5.1(B) as it relates to BOA's ability to notify the impacted merchants on the VISA network given that their summary judgment response totally ignored BOA's argument invoking § 5.1(B), the Court considers the notification issue not to be a contested one in actuality because BOA stated both in its summary judgment motion and at oral argument that it is willing to let the defendants make the merchant notification, so long as the notification is ordered to be made. Based on that willingness, the Court will permit the defendants to notify their impacted merchants of the termination of the BIN Sponsorship Agreements. The Court further adopts the schedule proposed by the

defendants concerning the timing of the notification and the termination of the sponsorship agreements.

B. Contents of the Notification

Both sides submitted to the Court on January 28, 2013 differing versions of what the notification to the impacted merchants should state. As was made clear during oral argument, the parties' dispute about the contents of the notification, in effect, comes down to one issue, which is whether the notification should contain a statement informing the merchants that their ability to process credit card transactions may be adversely impacted if the defendants do not obtain a new bank sponsor. As expressed at oral argument, the defendants' position is that no such language should be included because there is no practical possibility that the VISA and MasterCard networks will ban the merchants from accepting the networks' credit cards even if the defendants do not obtain a new bank sponsor, and because BOA's desire to include the contested language, together with its request that the Court order the defendants to provide it with their confidential merchant client contact information for notification purposes, stems from it wanting to get the merchants to transfer their business to a credit card servicing company in which BOA has an ownership interest. BOA's contrary position is that the contested language is appropriate because an interruption of credit card processing services is a possibility given that its understanding is that neither VISA or MasterCard has made any decision yet about cutting off the impacted merchants if no new bank sponsor is obtained, and that there is no basis for the latter concern of the defendants since BOA has a non-compete agreement with the defendants and is not attempting to obtain the credit card servicing business of the defendants' merchant customers. Without deciding if there is any factual basis for either side's

statements made during oral argument concerning this issue, given that the parties acknowledged that their statements do not have support in the evidence of record, the Court concludes that the notification language submitted by the defendants should be adopted as the Court considers it to be the more appropriate language under the circumstances.[1]  Therefore,

IT IS ORDERED that Plaintiff's Motion for Summary Judgment (Doc. 17) is granted to the extent that the Court makes the following declarations:

(1) Plaintiff Bank of America, N.A. validly terminated its BIN Sponsorship Agreements with defendants POST Integrations, Inc. and Ebocom, L.L.C. effective December 31, 2010;

(2) As of **June 30, 2013**, Bank of America, N.A. will have no obligation, contractual or otherwise, to provide any services to Post Integrations, Inc.'s merchant clients under the Merchant Services Agreements between and among the merchant, Post Integrations, Inc. and Bank of America, N.A.

(3) POST Integrations, Inc. shall notify in writing its merchant contract entities that, as of June 30, 2013, Bank of America, N.A. will have no obligation, contractual

---

[1] The defendants' proposed wording of the notification, which the Court is adopting, states in its body:

> As you may be aware, Bank of America ("Bank") as a member of the VISA and MasterCard associations, has acted as BIN sponsor with respect to the credit card processing services provided to you by POST Integrations, Inc. ("POST").  This communication is to notify you that as of June 30, 2013 the Bank will no longer serve as BIN sponsor to POST and therefore the Bank will no longer be a party to your Merchant Services Agreement with POST and all the Bank's obligations to you under that Agreement shall cease effective June 30, 2013.
> If you have any questions concerning this notice, please do not hesitate to contact POST Client Services at 800-921-9444.

or otherwise, to provide any services to the foregoing merchants under the Merchant Services Agreements between and among the merchant, POST Integrations, Inc. and Bank of America, N.A.  The form of such written notification shall be that contained in the defendants' submission to the Court on January 28, 2013, as set forth in footnote 1 of this Order.  Such merchant notification shall occur no later than **March 22, 2013**.  POST Integrations, Inc. shall promptly certify in writing to Bank of America, N.A. that the required notification to the merchants has been made in accordance with this Order.

(4)  Effective as of June 30, 2013, Bank of America, N.A. shall relinquish all rights to the Bank Identification Numbers (BINs) and Interstate Card Associations (ICAs) of Post Integrations, Inc. and Ebocom L.L.C., and shall, as soon as practical after June 30, 2013, transfer such BINs and ICAs to Post Integrations, Inc. and Ebocom L.L.C.  Upon such transfer, Bank of America, N.A. shall have no further duties, responsibilities, or rights with respect to such BINs and ICAs.  Post Integrations, Inc. and Ebocom, L.L.C. shall continue to make payments to Bank of America, N.A. as specified in the BIN Sponsorship Agreements until June 30, 2013.

IT IS FURTHER ORDERED that the Clerk of the Court shall enter judgment in favor of plaintiff Bank of America, N.A. as set forth in this Order.

DATED this 4th day of February, 2013.

Paul G. Rosenblatt
United States District Judge